1

```
1                   IN THE UNITED STATES DISTRICT COURT
             IN AND FOR THE EASTERN DISTRICT OF WASHINGTON
2
   ------------------------------
3                                )
   UNITED STATES OF AMERICA,     )
4                                )
                    Plaintiff,   )   NO. 2:19-MJ-75-JTR-1
5                                )
             -vs-                )
6                                )
   JAYDIN LEDFORD,               )
7                                )   February 26, 2019
                    Defendant.   )   Spokane, Washington
8  ------------------------------

9

10                 VERBATIM REPORT OF PROCEEDINGS
             PRELIMINARY HEARING AND DETENTION HEARING
11
                BEFORE THE HONORABLE JOHN T. RODGERS
12                 UNITED STATES MAGISTRATE JUDGE

13  APPEARANCES:

14  FOR THE PLAINTIFF:          PATRICK CASHMAN
                                Assistant U.S. Attorney
15                              920 W. Riverside
                                Spokane, WA  99210
16
    FOR THE DEFENDANT:          LORINDA YOUNGCOURT
17                              Federal Defenders of Eastern
                                Washington & Idaho
18                              10 N. Post, #700
                                Spokane, WA 99201
19

20

21  TRANSCRIBED BY:             Lynette Walters, RPR, CRR, CCR
                                Official Court Reporter
22                              P. O. Box 845
                                Yakima, WA  98907
23                              (509) 573-6613

24
     Proceedings recorded by digital recording; transcript
25   produced by computer-aided transcription.
```

2

1                           I N D E X

2                                                      Page

3               Preliminary Hearing                     3
                   Government's Argument               11
4                  Defendant's Argument                13
                   Government's Argument               15
5                  Court's Ruling                      16

6
                Detention Hearing                      17
7                  Government's Argument               17
                   Defendant's Argument                20
8                  Government's Argument               23
                   Court's Ruling                      23

9

10

11                    INDEX TO WITNESSES

12                                                      Page

13   GOVERNMENT'S WITNESSES

14   MARK ZAHACZEWSKY
        Direct Examination by Mr. Cashman              4
15      Cross-Examination by Ms. Youngcourt            8

16

17

18                    INDEX TO EXHIBITS

19                                                   Admitted

20      Government's Exhibit 1                          8

21

22

23

24

25

PRELIMINARY HEARING                              3

1       (FEBRUARY 26, 2019, 2:07 P.M.)

2               THE CLERK:  The matter now before the court is

3   United States versus Jaydin Ledford, Case No. 2:19-MJ-75-JTR-1.

4   Time set for preliminary and detention hearing.

5               Counsel, please state your name for the court and

6   record.

7               MR. CASHMAN:  Good afternoon, Your Honor.  Patrick

8   Cashman on behalf of the United States.

9               THE COURT:  Good afternoon.

10              MS. YOUNGCOURT:  Lorinda Youngcourt on behalf of

11  Jaydin Ledford.

12              THE COURT:  Good afternoon.

13              MR. CASHMAN:  Thank you, Your Honor.

14              Your Honor, we're here before the court pursuant to

15  the court's order to hold a preliminary hearing, as well as a

16  detention hearing.  At this point in time, the government is

17  ready to proceed with the preliminary hearing, and we would like

18  to call a witness.

19              THE COURT:  Ms. Youngcourt, do you have any other

20  evidence that you're going to offer, just to give me the big

21  picture here?

22              MS. YOUNGBLOOD:  No, Your Honor.  I anticipate

23  cross-examining this witness.

24              THE COURT:  All right.  Of course.

25              Go ahead, Mr. Cashman.

PRELIMINARY HEARING                          4
ZAHACZEWSKY - Direct

1          MR. CASHMAN:  Thank you, Your Honor.  The government

2     would call Special Agent Zahaczewsky.  Hopefully, I pronounced

3     that correctly.

4          THE COURT:  Please face the clerk and raise your right

5     hand.

6          (MARK ZAHACZEWSKY, appearing as a witness for the
            government, being duly sworn, testified as follows:)

7

8          THE CLERK:  Okay.  Please have a seat, and spell your

9     first and last name for the court and record.

10         THE WITNESS:  My name is Mark, M A R K, Zahaczewsky,

11    Z A H A C Z E W S K Y.

12         THE COURT:  Agent Zahaczewsky, would you kindly face

13    Mr. Cashman, and stay near the microphone so we can hear you,

14    and address yourself to his questions.

15         THE WITNESS:  Yes, Your Honor.

16         MR. CASHMAN:  Thank you, Your Honor.

17                    DIRECT EXAMINATION

18    BY MR. CASHMAN:

19    Q    Special Agent, how are you employed?

20    A    I'm a special agent with the FBI.

21    Q    And how long have you been employed with the FBI?

22    A    I have been so for almost seven years.

23    Q    Any law enforcement experience prior to that?

24    A    No.

25    Q    Can you describe some of your duties as a special agent?

PRELIMINARY HEARING                                    5
ZAHACZEWSKY - Direct

1    A    Prior to my time in Couer d'Alene, I was an Indian Country

2    agent working various criminal violations on the Blackfeet

3    Indian Reservation in Northern Montana.  I've been here in

4    Couer d'Alene for approximately a year and a half, and I've had

5    various criminal violations to investigate here.

6    Q    Okay.  Now, you're not the primary agent on this case; is

7    that correct?

8    A    I am not.

9    Q    Have you had an opportunity to become familiar with this

10   case?

11   A    I have seen several documents pertaining to this case.

12   Q    And those documents include a search warrant affidavit?

13   A    Correct.

14   Q    As well as a criminal complaint affidavit?

15   A    That is correct.

16   Q    Okay.  And was that the extent of your involvement in this

17   case?

18   A    That is the extent of my involvement.

19   Q    Now, are you familiar with an individual named Jaydin

20   Ledford?

21   A    I am.

22   Q    Okay.  And prior to today's hearing, did you have an

23   opportunity to observe a photograph of Mr. Ledford?

24   A    Yes.

25   Q    And do you see the defendant, Mr. Ledford, in the courtroom

PRELIMINARY HEARING                                    6
ZAHACZEWSKY - Direct

1   today?

2   A    I do.

3   Q    And could you identify where that individual is seated, and

4   what they're wearing?

5   A    He's sitting at the defense counsel table, wearing a yellow

6   jumpsuit.

7   Q    Thank you.

8        MR. CASHMAN:  Your Honor, may the record reflect that

9   the witness has identified the defendant.

10       THE COURT:  So the record will reflect that he has

11  identified the person sitting next to counsel as the defendant.

12       MR. CASHMAN:  As the defendant.  Thank you, Your

13  Honor.

14  Q    (By Mr. Cashman)  Now, you did not prepare an affidavit in

15  this case; is that correct?

16  A    I did not.

17  Q    Have you had an opportunity to review an affidavit in

18  support of a criminal complaint in this case?

19  A    Yes, I have.

20       MR. CASHMAN:  If may approach, Your Honor.

21       THE COURT:  Yes.

22  Q    (By Mr. Cashman)  Now, I've handed you what's been

23  previously marked as Government's Exhibit 1, which I also showed

24  to defense counsel.  Do you recognize this exhibit?

25  A    Yes, sir, I do.

PRELIMINARY HEARING                              7
ZAHACZEWSKY - Direct

1   Q    And could you tell us what it is?

2   A    It's a criminal complaint for Jaydin Ledford.

3   Q    And what does it contain?

4   A    Information pertaining to a violation of a criminal code.

5   Q    And is that code 18 U.S.C. § 875(c)?

6   A    That is correct.

7   Q    And does the affidavit also list in there how one may

8   violate 18 U.S.C. § 875(c), specifically at Paragraph 4?

9   A    Yes, it does.

10  Q    Now, your signature is not on this affidavit, but whose

11  signatures are on this affidavit?

12  A    Special Agent Marjoe Jennings.

13  Q    Okay.  And is Special Agent Marjoe Jennings an FBI special

14  agent?

15  A    Yes, she is.

16  Q    And is the document also signed by a magistrate judge?

17  A    Yes, it is.

18  Q    Now, is the information in Government Exhibit 1 a true and

19  accurate reflection of the facts as known to you at the time the

20  affidavit was executed?

21  A    To the best of my knowledge, yes.

22  Q    Okay.  And do you have any corrections or additions you'd

23  like to make?

24  A    I do not.

25  Q    For purposes of today's hearing, do you incorporate and

PRELIMINARY HEARING                     8
ZAHACZEWSKY - Cross

1   adopt the facts as set forth in the affidavit as part of your

2   testimony?

3   A    Yes, I do.

4        MR. CASHMAN:  At this point in time, the government

5   would request that the affidavit be moved into evidence, Your

6   Honor.

7        THE COURT:  Ms. Youngcourt?

8        MS. YOUNGCOURT:  No objection.

9        THE COURT:  Admitted.

10       MR. CASHMAN:  Thank you, Your Honor.  That concludes

11  the government's evidence.

12       THE COURT:  Okay.  Agent Zahaczewsky --

13       THE WITNESS:  Yes, Your Honor.

14       THE COURT:  -- the defense may have some questions.

15       THE WITNESS:  Yes, Your Honor.

16                    CROSS-EXAMINATION

17  BY MS. YOUNGCOURT:

18  Q    Officer, I want to -- agent.  I'm sorry.  Special agent.  I

19  want to clarify.  So that means you were not present during the

20  search of Mr. Ledford's home?

21  A    I was not.

22  Q    Are you -- in addition to the documents you've read, did

23  you read any of the reports generated by the other officers?

24  A    I have not.

25  Q    Or agents.  Okay.  So that means you're not aware that

PRELIMINARY HEARING                    9
ZAHACZEWSKY - Cross

1    there were no weapons found in the home?

2    A    I'm not aware of that.

3    Q    There was no means -- there was nothing in the home that

4    indicated a means of him to carry out any of the threats on

5    Facebook?

6    A    I'm not aware.

7    Q    Are you aware that that was an open Facebook page?

8    A    I am aware of that fact.

9    Q    So that was not -- no one was trying to hide it?

10   A    Correct.

11   Q    Anybody could search his name?

12   A    That is correct.

13   Q    They could probably also search the name of Mark Janus?  Do

14   you know who Mark Janus is?

15   A    I saw his name in the affidavit, correct.

16   Q    Do you know any significance about him?

17   A    Very briefly.

18   Q    Mark Janus is the named, I can't remember, is it plaintiff

19   or defendant --

20   A    Plaintiff.

21   Q    -- in the U.S. Supreme Court case concerning unions and

22   union activity; is that correct?

23   A    Yes, ma'am, to the best of my knowledge.

24   Q    And were you familiar with Sheriff Knezovich and his latest

25   statements that he was not going to enforce Washington law?

PRELIMINARY HEARING                              10
ZAHACZEWSKY - Cross

1    A    I'm not aware of statements that he made.

2    Q    And you're not -- you've not listened to the audio -- or, I

3    don't know if it was videotaped or not, but the audio or

4    videotape interview with special agents and Mr. Ledford?

5    A    I have not.

6    Q    So -- and in this affidavit -- so, essentially, you've come

7    to court to say I read this?

8    A    That is correct.

9    Q    Okay.  And, so, it's hearsay to you?

10   A    That is correct.

11   Q    And, in fact, some of it is hearsay to the person who wrote

12   it?

13   A    That may be correct.

14   Q    Officer, how many other times have you been called on to

15   investigate threats like this?

16   A    This specific violation, I have not.

17   Q    You've never done any of the threats with high school

18   students?

19   A    Not that got to this point, no.

20   Q    Middle school students?

21   A    Not that got to this point, no.

22   Q    And is the current policy zero tolerance.

23   A    I'm unaware of this specific policy.

24   Q    And are you -- do you have any knowledge whatsoever of

25   Mr. Ledford's mental health status?

PRELIMINARY HEARING                    11

1   A    I have no knowledge.

2             MS. YOUNGCOURT:  Thank you.

3             THE COURT:  Anything further, Mr. Cashman?

4             MR. CASHMAN:  No, Your Honor.  Thank you.

5             THE COURT:  Thank you very much, Agent.  You may step

6    down.

7             THE WITNESS:  Thank you, Your Honor.

8             THE COURT:  Mr. Cashman, do you have any additional

9    evidence?

10            MR. CASHMAN:  We do not.  And I'm going to retrieve

11   Government's Exhibit 1 from the witness.

12            THE COURT:  The record will so reflect.

13            MR. CASHMAN:  Thank you.

14            THE COURT:  Ms. Youngcourt, did you wish to make any

15   proffer, testimony or otherwise?

16            MS. YOUNGCOURT:  No, sir.

17            THE COURT:  All right.  Argument from the government.

18            MR. CASHMAN:  Thank you, Your Honor.

19            Your Honor, the government submits that probable

20   cause has been established via Government Exhibit 1, which is

21   the affidavit that alleges that Mr. Ledford violated

22   18 U.S.C. § 875.

23            I would note that the threats that were made that

24   constituted the violation are noted on Page 3 of the affidavit,

25   near the top.  One of those happened on February 1st, 2019, in

1   which Mr. Ledford, using his Facebook account, Embrace Death --

2   well, actually, I believe it's indicated as Jaydin Ledford

3   (Embrace Death) stated that:  Ozzie Knezovich is gonna get a

4   bullet in his skull.

5           That was subsequently followed that same evening by a

6   comment by him that, I'm ready to die.

7           The next day he goes online, and he states:  I1639 is

8   law, sheriffs that are noncompliant will be shot by me,

9   indicating multiple potential individuals that could be

10  victimized.

11          February 3rd:  How is Mark Janus alive?  He still

12  lives in Illinois.  Execute him.

13          Then in the comments to that posting, Mr. Ledford

14  writes an expletive, all, I'll do it myself.  I bet his brains

15  taste delicious, and low fat, too lean, scab brains, mmmmmm.

16          And on February 4th, he goes on to indicate a comment

17  to an article regarding President Trump, and indicated that he's

18  going to shoot this person in the head.

19          Now, the government submits those statements, in an of

20  themselves, constitute a violation of 18 U.S.C. § 875.  And on

21  cross-examination, I would note that Ms. Youngcourt indicated

22  that there were no firearms located in the apartment.  And that

23  is accurate.  But the point being is the law does not require

24  that the individual actually have the means to carry out the

25  threat.  It's the simple violation of making the threat in and

1   of itself that is a violation of the law.

2           And I would submit to you that this affidavit

3   significantly covers the essential elements of violations of

4   18 U.S.C. § 875.  Furthermore, I would highlight that on

5   February 20th, 2019, at the time that he was taken into custody,

6   Mr. Ledford elaborated in his interview with Special Agent

7   Marjoe Jennings and TFO Shane McClary, and he had indicated that

8   he did, in fact, intend to kill Mr. -- or Sheriff Knezovich, or

9   words to that effect, that Mr. -- or Sheriff Knezovich should be

10  in fear of the threats made by him, or words to that effect,

11  and, further, that he wanted to, potentially, hurt cops.

12          The government submits that, given his statement to

13  law enforcement, is further corroboration of his statements made

14  on Facebook, using his Facebook account, that resolve to an IP

15  address that is his address, that he has -- that probable cause

16  has been established that he's violated 18 U.S.C. § 875.

17          Thank you.

18          THE COURT:  Thank you, Mr. Cashman.

19          Ms. Youngcourt.

20          MS. YOUNGCOURT:  Your Honor, it's my understanding

21  from the brief research I've been able to do since being

22  assigned this case that this is a specific intent crime.  And I

23  would suggest that, while the initial facts that were laid out

24  in the affidavit for this court to review to grant the search

25  warrant were valid for that search warrant, given all the

PRELIMINARY HEARING                         14

1    circumstances put together, that this should not prevail past

2    probable cause.

3              First off, what the court -- I proffer to the court

4    that Mr. Ledford is disabled, mentally disabled.  He's on the

5    autism spectrum disorder.  He also suffers from scoliosis of the

6    spine.  He lives -- was just recently able to move out and live

7    on his own in an apartment that his mother, who is a professor

8    at Wenatchee Valley College, teaches human development, was able

9    to arrange for him with various types of government assistance.

10             The specific symptoms of autism that affect

11   Mr. Ledford are somewhat of an inability to control, I want to

12   say, overreaction, if that makes sense.  It's very, very clear

13   that Mr. Ledford is extremely politically active.  He sees

14   himself as a social justice warrior.  And I pose, in his mind,

15   these were simply comments on the current state of the politics

16   in the world that he lives in and that he's aware of,

17   understanding that you and I interpret that completely

18   differently.

19             However, there were no guns.  He doesn't drive,

20   doesn't have a car.  He rarely, rarely leaves his home.  And

21   that's only in the accompaniment of his mother.

22             So I would ask the court to consider the totality of

23   the circumstances, given that this is a specific intent crime,

24   and that Mr. Ledford had no means to commit the crimes that he

25   discussed, or the actions that he stated to reflect his disgust

1   with the current state of the political realm that he's in.

2           And while Mr. Ledford is autistic, as the court well

3   knows, many, many, many people that are autistic are above

4   average in intelligence.  Mr. Ledford is that way, and sometimes

5   his vocabulary gets ahead of his true meaning and intent.  So we

6   would ask the court to not find probable cause.

7           THE COURT:  Thank you, Ms. Youngcourt.

8           Mr. Cashman, do you want to respond?

9           MR. CASHMAN:  Your Honor, I'm going to quote from

10  18 U.S.C. § 875, subparagraph (c).  Whoever transmits in

11  interstate or foreign commerce any communication containing any

12  threat to kidnap any person or any threat to injure the person

13  of another shall be fined under this title or imprisoned not

14  more than five years, or both.

15          I go back to the PC affidavit that supported the

16  criminal complaint in this case that outlined numerous

17  statements on behalf of Mr. Ledford indicating his specific

18  intent that these were to be threats.  And further corroborative

19  of this is that his statements to law enforcement after the fact

20  is that these statements were specifically made to put people in

21  fear.  That is a true threat.

22          The elements that are required is that a threat be

23  made, that it was a true threat, and that the individual

24  intended for it to be a threat, and that the threats were made

25  in interstate and foreign commerce.  Those are the elements to

PRELIMINARY HEARING                          16
COURT'S RULING

1   meet the very low threshold of probable cause in this case.  And

2   I submit to you that the facts contained in the affidavit meet

3   those essential elements as to 18 U.S.C. § 875.

4           Thank you, Your Honor.

5           THE COURT:  Well, I'm never sure that the party who

6   wants to attack probable cause raises the issue with the same

7   magistrate who signed the probable cause complaint, but I

8   understand that we're a little short of magistrates in this

9   district.  But if there's any time when you've got some other

10  magistrate here, I hope that you feel free to make those

11  arrangements without needing to check with our chambers.

12          I also confess that I had some reservations before I

13  signed this.  It is a very general statement.  Does a threat

14  have to be communicated to the object of the threat?  Does it

15  have to be specific intent?  I think there's enough here to

16  answer that that there's probable cause for that, but I don't

17  know how much further it would go.  And I'm certainly not saying

18  how I would rule on something.  But I think the defense raising

19  the issue is understandable.

20          But given the statements about specific individuals,

21  execute him, I'm going to shoot this blank in the head, so on,

22  Ozzie Knezovich is going to get a bullet in the skull,

23  statements like that are specific.  They're certainly consistent

24  with specific intent, if they aren't originating in specific.

25  And on a public website, they could conceivably be communicated

DETENTION HEARING                    17

1    to the object of the threat.  That's why I found probable cause.

2              Again, how much farther it goes, I don't know, but I'm

3    denying the motion to dismiss for lack of probable cause for

4    those reasons.

5              MR. CASHMAN:  Does the court want to proceed with the

6    detention hearing?

7              THE COURT:  I'm ready if the parties are.  Sure.

8              MR. CASHMAN:  Thank you, Your Honor.

9              Your Honor, the government notes that the government's

10   motion for detention is at ECF No. 4.  The Government is also in

11   receipt of ECF No. 5, and the government has had an opportunity

12   to review that.

13             Furthermore, the government agrees with the

14   United States Probation Office's recommendation that it appears

15   that no condition or combination of conditions can be imposed by

16   the court to reasonably assure the defendant's appearance in

17   court or the safety of the community.

18             I want to highlight a few things as we proceed through

19   here.  The government believes the defendant is a risk to the

20   community, and, furthermore, that the defendant presents a risk

21   of flight.

22             Now, with regard to the risk to the community, the

23   defendants actions in this case are indicative of his risk.

24   He's made numerous threats to sheriffs in the community for

25   their position on I1639, which is a Washington State law.

1   That -- one specific sheriff is our Spokane County Sheriff,

2   where he elaborated that he wanted to shoot this individual in

3   the head, or put a bullet in their skull, and further indicated

4   that his was his intent that that person be placed in fear.

5          Additionally, the government believes he's a risk to

6   the community because he's manifested an intent to hurt police

7   officers.  If released, and presuming that there potentially

8   could be violations of conditions of pretrial release, that's

9   going to require, potentially, law enforcement officers to go

10  back out and recontact Mr. Ledford again in the future.  His

11  manifestation of his desire to hurt a police officer or to hurt

12  cops is going to place those individuals at risk.  And those

13  individuals are part of the community, and those individuals

14  deserve protection.

15         So when determining whether, under 3142, this

16  individual wants release, I would harken back to the fact that

17  if he were released, there are going conditions placed upon him,

18  and those conditions by this court could potentially be

19  violated, and it is going to put people at risk.

20         I would further note that, in ECF 5, it indicates what

21  appears to be untreated mental health issues.  And I think that

22  is -- while this court has experience seeing individuals come

23  before this court with mental health issues, I think, in this

24  particular case, they are of a very significant nature in terms

25  of determining whether this person is a risk to the community.

DETENTION HEARING                          19

1        And I don't say this lightly, because mental health is
2   an important thing.  But it's mental health issues that are
3   untreated.  And I would note in ECF No. 5 that the mother of
4   Mr. Ledford indicated that she had been trying to get the
5   defendant to engage in services for many years, but he refused
6   to do that.  And she stated the defendant is currently
7   unmedicated and not receiving any sort of treatment, to her
8   knowledge.
9        Now presumably the court, if the court were to release
10  the defendant, would set conditions that the defendant attend
11  treatment.  But that doesn't necessarily mean that he will
12  attend treatment, and it doesn't necessarily mean that he will
13  follow the requirements of treatment, whether it be counseling,
14  or medication, or what it might be.  So what we'll have,
15  potentially, is an individual in the community who has mental
16  health issues that are untreated, again, continuing to put the
17  community at risk.
18       Now, in addition to him being a risk to the community,
19  from the government's standpoint, given the circumstances in
20  this case, the specific nature of the threats made, and how the
21  threats were made, for lack of a better term, the government
22  thinks there is a risk of release in terms of his ability to
23  appear for future court hearings.
24       Contained within ECF No. 5 were multiple statements
25  of -- or indications that the defendant had significant problems

1  in school related to mental health and behavioral issues, that

2  he had problems at employment for inappropriate behavior, and he

3  struggled with interactions with other individuals, and they

4  appeared to be related to his, his mental health issues.

5          The government has significant concerns that if the

6  defendant is placed on supervised release, his ability to

7  actually even follow through with the court's orders, that he

8  would be able to appear on time for court, as the court

9  requires, that he would be able to follow whatever conditions

10  the court imposes on him, because it is indicative from

11  ECF No. 5 that he has a difficult time following those

12  directions.

13          And, so, what that potentially is going to result in

14  is future violations in the defendant appearing before this

15  court, again, requiring law enforcement to go out and make

16  contact with someone who's already manifested a desire to hurt

17  law enforcement.

18          So the government submits that its burden of

19  preponderance of evidence that the defendant is a flight risk

20  has been met, and, furthermore, that the government has proven

21  by clear and convincing evidence that he is a risk to the

22  community, and I submit to you that the court should follow the

23  United State Probation Office's recommendation that he remain.

24          THE COURT:  Thank you, Mr. Cashman.

25          MS. YOUNGCOURT:  Your Honor, I hear the government's

DETENTION HEARING                                    21

1    concern, and I don't doubt it.  However, I'm significantly
2    troubled by the idea that somebody with a mental illness whose
3    symptoms are recorded in a pretrial services report, and are as
4    minor as not did well in school are now being used as reasons
5    that he should be incarcerated.
6              There's a great deal of guessing on the government's
7    part as to what might happen.  And I'm confident that the law is
8    clear that the court is not supposed to try and guess what the
9    risk could be.
10             You know, the picture that I believe the government
11   has painted is either we allow Mr. Ledford to go out and seek
12   treatment, or we keep him in, and we send him to Eastern State.
13   I think what I've heard is an acknowledgement that there is a
14   mental health concern here.
15             Mr. Ledford is 23 years old.  We never heard of him
16   before.  Never heard of him before.  Never been in trouble
17   before.  Never has done anything violent before.  No driving
18   tickets because he doesn't drive.  No driver's license.  He
19   stays at home.
20             And I understand, and I believe everybody else in the
21   courtroom, except for, perhaps, Mr. Ledford, understands the
22   difference between a threat of I'm going to take your money
23   away, State of California, because I don't like what you're
24   doing, and I'm going to put a bullet in your head.  That's our
25   threats.  I understand that.  I'm not sure that he does.

1           I ask the court, implore the court to release him.

2    And if the court is concerned, I will -- we can have another

3    hearing, and his mother can come here, and you can release him

4    to his mother's care and custody.  Her life partner,

5    Rob Stafford, is a residential counselor at Okanogan Mental

6    Health.

7           As a parent trying to support your child in living an

8    independent life, there's a fine balance between do I force you

9    to get mental health care, are you truly a risk to yourself or

10   somebody else, which is what it would take for civil commitment

11   if his mother was going to force him to take medication, and a

12   situation like Mr. Ledford is in today, which is this court is

13   going to order him to do that.  And very quickly, if he doesn't

14   do that, he can be arrested and brought back.

15          There is no indication in any of the reports that

16   Mr. Ledford was the least bit violent, obstreperous, obnoxious,

17   or anything when the police came to his door.  It's guessing

18   when we're saying that he could be violent to police officers.

19          I don't see him as a risk of flight.  He doesn't

20   drive.  He doesn't leave his home.  And there's absolutely no

21   history to rely upon to say that he's a risk to the community,

22   other than these statements that were made, which I assert to

23   the court were not made with the same knowledge or intent that

24   you or I might make.

25          Thank you.

DETENTION HEARING                          23
COURT'S RULING

1          THE COURT:  Thank you.

2          Anything further, Mr. Cashman?

3          MR. CASHMAN:  No, Your Honor.  I would just, again,

4   submit to the court that, under the totality of the

5   circumstances, when considering all the factors in this case,

6   the defendant does present a risk of flight, and he does present

7   a risk to the community.  And, again, I would reiterate to the

8   court that detention is appropriate and necessary, particularly

9   when considering the 3142 factors.

10          THE COURT:  Ms. Youngcourt decries the fact that we're

11  guessing.  That's really what it is.  However many college

12  degrees are among us, and however carefully crafted the

13  guidelines handed down by the elders of the culture, and the

14  legislatures, it's really just a guess.

15          And it's overlaid in this case by the fact that we

16  basically can't think of anything else to do with Mr. Ledford,

17  so we're going to stick him in jail.  I don't -- jail isn't a

18  mental health facility.  Getting medicines to Mr. Ledford in

19  jail is a Byzantine process.

20          I think of all these things, and I still grant the

21  government's motion.  But Mr. Ledford has an untreated illness

22  which, in this case, has manifested itself as a significant

23  danger.  And for those reasons, I must grant the motion.

24          But I hope that it doesn't stop here.  My only

25  alternative now is to release him.  And the general,

1   well-intended and sincere statement I have to show that is we'll

2   take care of him.  I need something more than that.  I need a

3   program, I need a diagnosis, I need a responsible person.  I

4   need something that I can hang some conditions on, because jail

5   is no place for a mentally-ill individual, and I don't want him

6   staying there any longer.  But given what I've seen this

7   afternoon, I don't have enough to fashion conditions which will

8   reasonably assure safety or return.

9        (ADJOURNMENT AT 2:38 P.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

25

1                        C E R T I F I C A T E

2

3

4

5            I, Lynette Walters, Official Court Reporter in and for

6    the Eastern District of Washington, hereby certify that the

7    foregoing transcript contained in pages 1 through 24 is a true

8    and correct transcript of the electronic recording of the

9    proceeding to the best of my ability.

10           Dated this 4th day of March, 2019.

11

12

13

14                              s/ Lynette Walters
                                Lynette Walters, RPR, CRR, CCR
15                              CCR NO. 2230

16

17

18

19

20

21

22

23

24

25