1 | William D. Hyslop
United States Attorney
2 | Eastern District of Washington
Patrick J. Cashman
3 | Assistant United States Attorney
4 | Post Office Box 1494
5 | Spokane, WA 99210-1494
Telephone: (509) 353-2767
6 |
7 |
8 |

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**FEB 1 8 2020**

SEAN F. McAVOY, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| | Plaintiff, | 2:19-CR-00049-RMP--1 |
| v. | | Plea Agreement |
| JAYDIN LEDFORD, | | Fed. R. Crim. P. 11(c)(1)(C) |
| | Defendant. | |

Plaintiff, United States of America, by and through William D. Hyslop, United States Attorney for the Eastern District of Washington, and Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, and Defendant Jaydin Ledford and the Defendant's counsel, Andrea George, agree to the following Plea Agreement:

1)     Guilty Plea and Maximum Statutory Penalties:

The Defendant agrees to plead guilty to Count 2 of the Indictment filed on March 5, 2019, charging the Defendant with Threats in Interstate Communications, in violation of 18 U.S.C. § 875(c). The Defendant understands that the charge contained in the Indictment is a Class D Felony. The Defendant also understands that the maximum statutory penalty for Threats in Interstate Communications, in violation of 18 U.S.C. § 875(c), is: (1) not more than five (5) years imprisonment; (2) a fine not to

*United States v. Jaydin Ledford* - Plea Agreement - 1

exceed $250,000; (3) a term of supervised release of not more than three years or five years of probation; (4) and a $100 special penalty assessment.

The Defendant understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2)    The Court is Not a Party to the Agreement:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement. The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant understands that this is a Plea Agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) and that the United States may withdraw from this Plea Agreement if the Court imposes a lesser sentence than agreed upon. The Defendant further understands that the Defendant will have the option to withdraw from this Plea Agreement if the Court imposes a sentence greater than agreed upon.

3)    Waiver of Constitutional Rights:

The Defendant understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

*United States v. Jaydin Ledford* - Plea Agreement - 2

a) The right to a jury trial;

b) The right to see, hear and question the witnesses;

c) The right to remain silent at trial;

d) The right to testify at trial; and

e) The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4) Elements of the Offense:

The United States and the Defendant agree that in order to convict the Defendant of Threats in Interstate Communications, in violation of 18 U.S.C. § 875(c), the United States would have to prove beyond a reasonable doubt the following elements:

*First*, on or about February 1, 2019, the Defendant, knowingly transmitted in interstate commerce a communication, to wit: a Facebook posting "O.K. is going to get a bullet in his skull," which contained a threat to injure the person of another; and

*Second*, such communication was transmitted for the purpose of issuing a threat, or with knowledge that the Facebook posting would be viewed as a threat.[1]

5) Factual Basis and Statement of Facts:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

---

[1] See Ninth Circuit Model Criminal Jury Instruction, 8.47B, Transmitting a Communication Containing a Threat to Kidnap or Injure, September 2015.

*United States v. Jaydin Ledford* - Plea Agreement - 3

This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

On February 1, 2019 at approximately 5:22p.m., the Defendant, using Facebook Account Jaydin Ledford (Embrace Death), User ID: 100006473351367, publically posted a threat: "O.K. is gonna get a bullet in his skull."[2] At approximately 7:07p.m. that same date, the Defendant posted another public posting "i'm ready to die." On February 2, 2019 at approximately 6:01p.m. the Defendant posted a second threat on Facebook: "I1639 is law. Sheriffs that are non compliant will be shot by me." On February 04, 2019, Special Agent ("SA") Marjoe Jennings of the Inland Northwest Joint Terrorism Task Force ("INJTTF") became aware of the threatening Facebook postings made under the account of Jaydin LEDFORD (Embrace Death) 100006473351367.

On February 6, 2019, SA Jennings served an 18 U.S.C. § 2703(d) Court Order to Facebook for the account Jaydin LEDFORD (Embrace Death) Account number: 100006473351367. On February 13, 2019, SA Jennings received a response from Facebook indicating the user at the times of the threatening messages was using IP address: 68.186.79.187. SA Jennings also obtained subscriber information that identified the subscriber as the Defendant. Using this information, SA Jennings conducted an open source search of IP address 68.186.79.187 which indicated the IP address belonged to Highland Internet Services, Oroville, Washington.

On February 13, 2019, SA Jennings received information from Highland Internet Services stating that the subscriber of the services came back to the Defendant, Jaydin LEDFORD of Omak, Washington, within the Eastern District of Washington. Highland Internet Services also provided the credit card and telephone

---

[2] The name of the victim has been reduced to initials. In the original quote, the Defendant used the complete name of the victim.

*United States v. Jaydin Ledford* - Plea Agreement - 4

number for the subscriber. Both the telephone number and the credit card number match the numbers provided by Facebook for the Jaydin Ledford account.

SA Jennings conducted open source searches and confirmed Facebook Inc. has data servers in several states and the information posted on Defendant's Facebook account travelled across state lines. Coupled with the fact the Defendant's posts were public and viewable by anyone in the world, any information placed onto Facebook would fall under the Interstate Communication Act. The Defendant further stipulates that the communications travelled in interstate commerce.

On February 20, 2019, SA Jennings, TFO Shane McClary, and SA Paul Hagedorn (USSS) conducted a custodial interview of the Defendant. The Defendant was advised of his *Miranda* warnings and agreed to speak with the agents. During the interview, the Defendant said that he knew this interview was about the gun posts and that he stood by what he said. The Defendant indicated that he does not like guns and that he does not intend to kill cops. However, he also stated that he just wants the sheriffs to follow the law. The Defendant further confirmed that he made the statements on his Facebook account, Embrace Death, and confirmed that those statements were meant to be threatening. TFO McClary asked the Defendant if he agreed that the statements could be viewed as threatening and to which the Defendant stated "of course." Additionally, the Defendant when confronted about his intent to kill Sheriff Knezovich, stated "I kind of do really want to kill him" (meaning Ozzie Knezovich) and that "he wanted him to know, f****** goddamn pig." When further confronted by SA Jennings regarding his threatening posts about Sheriff Knezovich, the Defendant stated "I hope he is scared for his life."

6)    The United States Agrees:

a)    Dismissal(s):

At the time of sentencing, the United States agrees to move to dismiss Count 1 and Count 3 of the Indictment, which charge the Defendant with:

*United States v. Jaydin Ledford* - Plea Agreement - 5

*Count 1*: Cyberstalking, in violation of 18 U.S.C. § 2119A; and

*Count 3*: Threats in Interstate Communications, in violation of 18 U.S.C. § 875(c).

b)    Not to File Additional Charges:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Indictment, unless the Defendant breaches this Plea Agreement any time before sentencing.

7)    United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

a)    Base Offense Level:

The United States and the Defendant agree that the base offense level for Threats in Interstate Communications, in violation of 18 U.S.C. § 875(c) is 12. *See* USSG § 2A6.1(a)(1).

b)    Specific Offense Characteristics:

The parties are free to advocate for or against the application of any specific offense characteristics.

c)    Victim-Related Adjustments:

The United States is free to argue for victim-related adjustments because the victim was "a government officer or employee." *See* USSG § 3A1.2(a)(1). The Defendant is free to argue against the application of any victim-related adjustments.

//

//

*United States v. Jaydin Ledford* - Plea Agreement - 6

d)    Acceptance of Responsibility:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than February 13, 2020, the United States will move for a three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to USSG § 3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant commits, is charged and convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

e)    Criminal History:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigation Report. The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

8)    Departures:

The parties will not advocate for any aggravating or mitigating factors with respect to the correct calculation of the Sentencing Guidelines, except as set forth in this plea agreement. The United States and the Defendant agree that they will not seek either an upward or a downward departure from the applicable Guidelines.

The parties are free to seek a downward variance to effectuate the terms of this plea agreement.

//

*United States v. Jaydin Ledford* - Plea Agreement - 7

9)    Incarceration:

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Defendant and the United States agree that the Defendant be sentenced to no term of imprisonment and a five (5) year term of probation. If the Court does not accept the plea or chooses to sentence the Defendant to a greater or lesser sentence than the United States and the Defendant have agreed upon, the Defendant and the United States each may withdraw from the plea and this agreement is null and void.

10)    Criminal Fine:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

11)    Supervised Release/Probation:

The United States and the Defendant agree to recommend that the Court impose a 5 year term of probation to include the following special conditions, in addition to the standard conditions of supervised release:

a) that the Defendant participate and complete such drug testing and drug treatment programs as the Probation Officer directs;

b) that the Defendant complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. The Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. The Defendant shall contribute to the cost of treatment according to the Defendant's ability;

c) That the Defendant shall take all medication(s) prescribed by a mental health provider, excluding psychotropic medications;

d) that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer;

e) that the Defendant not have any contact with the victim(s);

*United States v. Jaydin Ledford* - Plea Agreement - 8

f) that the Defendant allow the Probation Officer or designee to conduct random inspections, including retrieval and copying of data from any computer, and any personal computing device that the Defendant possesses or has access to, including any internal or external peripherals.  This may require temporary removal of the equipment for a more thorough inspection.  The Defendant shall not possess or use any data encryption technique or program.  The Defendant shall purchase and use such hardware and software systems that monitor the Defendant's computer usage, if directed by the Probation Officer;

12)    Mandatory Special Penalty Assessment:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

13)    Payments While Incarcerated:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

14)    Additional Violations of Law Can Void Plea Agreement:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant commits, is charged and convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

15)    Appeal Rights:

Defendant understands that he has a limited right to appeal or challenge the conviction and sentence imposed by the Court.  Defendant hereby expressly waives

*United States v. Jaydin Ledford* - Plea Agreement - 9

his right to appeal his conviction and the sentence the Court imposes, including any restitution order. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

Should the Defendant successfully move to withdraw from this Plea Agreement or should the Defendant's conviction on Count 2 of the Indictment be dismissed, set aside, vacated, or reversed, this Plea Agreement shall become null and void; the United States may move to reinstate all counts of Indictment No. 2:19-CR-00049-RMP; and the United States may prosecute the Defendant on all available charges involving or arising from this investigation. Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack of the conviction or sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255 (writ of habeas corpus).

16)    <u>Integration Clause</u>:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

//

//

//

//

*United States v. Jaydin Ledford* - Plea Agreement - 10

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

William D. Hyslop
United States Attorney

Patrick J. Cashman
Assistant U.S. Attorney

2/18/2020
Date

*United States v. Jaydin Ledford* - Plea Agreement - 11

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney.  I understand and voluntarily enter into this Plea Agreement.  Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case.  No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement.  I am agreeing to plead guilty because I am guilty.

_____          18.2.20
Jaydin Ledford                                           Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client.  The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties.  I concur in my client's decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____          02-13-20
Andrea George                                          Date
Attorney for the Defendant