

Andrea K. George
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606
Attorney for Jaydin Ledford

# United States District Court
## Eastern district of Washington

| | |
|---|---|
| United States, | No. 2:19-CR-049-RMP |
| Plaintiff, | |
| v. | Sentencing Memorandum |
| Jaydin Ledford, | |
| Defendant. | |

## I. Probation is the appropriate sentence

> *"You can't come up with a formula to change the way you experience the world."*
>
> Sylvia Nasar, A Beautiful Mind.

A variance from the Guidelines is appropriate. Jaydin's motive for his Facebook post was righteous; the means he took to do it, was not. But that is because, he views the world through a different lens, with multiple mental health issues, including autism, ADHD, anxiety and depression. Because of autism, he has a difficult time understanding social cues and thus he would be vulnerable in prison. Prison would exacerbate his anxiety, depression and physical pain for which he is now receiving treatment. He is now in a better place than he was with housing, social services, social security disability income, and treatment.

Probation is the appropriate sentence.

### A. The §3553(a) factors warrant a variance from the Guidelines

In determining the appropriate sentence, district courts must follow the framework of 18 U.S.C. §3553(a), imposing "a sentence sufficient, but not greater than necessary" to (A) reflect offense seriousness, promote respect for the law, and provide just punishment; (B) afford adequate deterrence; (C) protect the public; and (D) provide the defendant with "needed educational or vocations training, medical

care, or other correctional treatment." 18 U.S.C. §3553(a)(2). Simultaneously, the court must consider the nature and circumstances of the offense and the history and characteristics of the defendant. §3553(a)(1).

While the court is directed to consider the sentencing range established by the Sentencing Commission, the United States Sentencing Guidelines are not mandatory. *United States v. Booker*, 125 S. Ct. 738, 756-57 (2005).

### 1.   His motive was rightous; his means was not

Jaydin Ledford experiences the world with an unique, beautiful, hyper-stimulated mind, constantly in motion, constantly seeking solutions to the world's problems – climate change, the timeline for when the world will end, the need to invest in hydrogen base engines, gun violence. His brain seamlessly jumps from one urgent concern to the next.

In 2018, he had an urgent concern about Sherriff K. Washington State passed Initiative 1639, requiring increased background checks, training, age limitations and waiting periods for sales of semiautomatic assault rifles. O.K. publically proclaimed the law unconstitutional. He proclaimed there was nothing in the law to enforce. Jaydin was concerned, concerned that O.K. would not do his job. A pacifist by nature, opposed to gun violence and anxious to do his part, Jaydin sent out Facebook posts – "[O.K.] is gonna get a bullet in his skull;" "I1639 is law. Sheriffs

that are non compliant will be shot by me." While hyperbole on his part, Jaydin's purpose was to threaten O.K. into enforcing the law.

Instead, Jaydin was indicted, arrested, pleaded guilty to posting a threat in interstate communications and now awaits sentencing.

Jaydin's guideline range is 18-24 months. As Jaydin pled to a Class D felony, probation is permissible. It is also appropriate. He threatened O.K. to push the sheriff to do his job – enforce gun control to prevent gun violence. A perfectly reasonable end. His motive was rightous; his means was not.

### 2.    He views the world through a different lens

To that end, Jaydin lives with autism, depression, attention-deficit/hyperactive disorder (ADHD) and overanxious disorder. It is through this lens, he views and responds to the world. This deep thinker, social justice warrior and  affable, gentle being is in a far better place than he was when he chose the wrong means to get the sheriff to enforce Washington's new gun control law.

### 3.    Jaydin would be vulnerable in prison

"Individuals with autism spectrum disorder do poorly in correctional settings."[1]  The inability to read social cues in a prison environment can be life-

---

[1] Isbella Michna, MD and Robert Trestman, PhD, MD, *Correctional Management and Treatment of Autism Spectrum Disorder*, J Am Acad Psychiatriy Law 44:253-58, p. 253 (Nov 2, 2016) (available at https://bit.ly/34LabS2).

threatening. "The [criminal justice system] currently lags behind the community in recognizing and appropriately managing individuals with ASD."[2] ASD prisoners are particularly vulnerable to other inmates' predatory behavior "because of their naivete and inability to discern motives. Extortion and sexual predation are not unusual in these environments."[3]

### 4.    He is in treatment for anxiety, depression and pain

Jaydin is living with severe anxiety, depression and physical pain from scoliosis.   In 2017, he was diagnosed with major dipressive disorder, severe, with a high risk of future suicide.  He was immediately seen at Okanogan Behavior Health and did will with cognitive and behavioral therapy.  (PSI 60)  He is back involved with counseling and sees a counselor on a weekly basis.

Along with emotional pain, Jaydin experiences physical pain on a daily basis. Jaydin is currently participating in ongoing osteopathic manipulative therapy due to his scoliosis.  Despite the daily pain, he is not taking any pain medication, although prior to his arrest, he ingested marijuana which significantly eased the pain.

---

[2] *Id.* at 255.

[3] Jack T. Donson, *Prison Accomodations. Representing People with Autism Spectrum Disorders*, Elizabeth Kelley, Editor, p. 157. Jack Donson is a former BOP employee and is now a BOP policy expert and advocate.  He runs My Federal Prison Consultant, LLC.

### 5. He is in a better place

Jaydin is now in weekly counseling, has stable housing, receives social security disability income[4] and has a support network.  A prison sentence would deprive him of these services.

## II. Conclusion

Probation is the appropriate end.  Having an additional support network will held Jaydin when all of the world's troubles are crashing down upon him and he feels the need to save the world.

A variance is appropriate because his motive was right.  A sheriff should enforce the law.

Dated:  September 2, 2020.

Federal Defenders of Eastern Washington & Idaho

*s/Andrea K. George*

Andrea K. George, MN 202125
10 North Post Street, Suite 700
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
andrea_george@fd.org

---

[4] Jaydin asks that the Court waive the $1,425.10 outstanding balance for the location monitoring costs during pretrial release.  He receives $763 in social security and $193 in food stamps per month.  He does not have the income to pay this balance.

Sentencing Memorandum
– 5 –

## Service Certificate

I certify that on September 2, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorneys: Patrick Cashman.

*s/Andrea K. George*

Andrea K. George, MN 202125
10 North Post Street, Suite 700
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
Andrea_George@fd.org